IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Marque Bowers, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 16-cv-____ |
| | ) | |
| Thomas Dart, Sheriff of Cook | ) | *(Jury Demand)* |
| County, Cook County, Illinois, | ) | |
| Correctional Officer Steven Rottar, | ) | |
| Social Worker Puckett, and Lt. | ) | |
| Tucker, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff re-files 14-cv-6259 and 14-cv-9685 and, by counsel, alleges as follows:

1. This is a civil action arising under 42 U.S.C. § 1983, Section 202 of the Americans with Disabilities Act, 42 U.S.C. §12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a). The jurisdiction of this Court is conferred by 28 U.S.C. § 1343, 28 U.S.C. §12133, and 29 U.S.C. §794a(a)(2).

2. Plaintiff Marque Bowers is presently held as a pre-trial detainee in the Cook County Jail.

3. Defendant Thomas Dart is the Sheriff of Cook County. Plaintiff sues Dart in his official capacity only.

4. Defendant Cook County, in collaboration with the Sheriff as outlined in the January 2011 Inter-Agency Agreement, is responsible for accommodating the

needs of disabled prisoners remanded to the Sheriff of Cook County and is a necessary party in this action pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003).

5. Defendants Sheriff and Cook County have received federal funds since at least 2011.

6. At all times relevant, defendants Officer Rottar, Social Worker Puckett, and Lt. Tucker were employed by the Sheriff of Cook County and were responsible for protecting the health and well-being of plaintiff. Plaintiff sues these defendants in their individual capacity.

7. In late December of 2012, while assigned to Division 1 of the Jail, plaintiff made repeated complaints to defendants Rottar, Puckett, and Tucker that he had received threats of physical violence from other detainees and requested to be moved to a different housing unit.

8. Division 1 of the Jail is the oldest facility at the jail complex and, in 2012, was used to house detainees accused of serious crimes, including crimes of violence.

9. Each of defendants Rottar, Puckett, and Tucker had the power to transfer, or to request a transfer, of plaintiff to a more secure environment and thereby protect plaintiff from an unnecessary risk of physical harm.

10. Each of defendants Rottar, Puckett, and Tucker made a deliberate decision to refuse to take any action in response to plaintiff's reports of threats from other detainees.

11. As the direct and proximate result of the above described deliberate indifference of defendants Rottar, Puckett, and Tucker, plaintiff remained in the housing unit with persons who had threatened him with harm and who inflicted serious personal injuries on plaintiff on December 31, 2012.

12. Defendant Tucker knew, at the time plaintiff reported the above referred threats to him, that defendant Dart was requiring officers to "cross-watch" the tier in which plaintiff was being held.

13. "Cross-watching" means that one officer is responsible for the care and supervision of more than one tier of inmates.

14. At all times relevant, defendant Tucker knew that it was impossible for one officer to safely watch the tier to which plaintiff was assigned as well as another tier in Division 1.

15. In 2008, the United States Department of Justice informed the Sheriff of Cook County that cross-watching was unacceptable, dangerous, and likely to result in serious bodily injury to detainees.

16. Defendant Sheriff ignored this finding that cross-watching was unacceptable, dangerous, and likely to result in serious bodily injury to detainees and required correctional officers to continue to follow this practice.

17. At all times relevant, defendant Sheriff knew that cross-watching created a major security risk and was likely to result in detainees receiving serious personal injuries.

18. Between 2008 and December of 2012, cross-watching was responsible for serious personal injuries to numerous detainees at the Jail.

19. Defendant Dart's cross-watching policy was a direct and proximate cause of the serious personal injuries plaintiff received in December of 2012.

20. After plaintiff's injuries, defendant Rottar provided a statement to the Sheriff's Office where he acknowledged a "vertical crosswatch program was used at the time of the incident" which required one tier officer to supervise three tiers of inmates. Defendant Rottar acknowledged this practice was "dangerous because it essentially left 3 tiers unsupervised at any given time."

21. Defendant Dart knew vertical cross watching was used in Division 1 in December 2012 as a result of Corrections Monitor McCampbell's periodic reports filed in *United States v. Cook County*, 10-cv-2946.

22. The serious personal injuries plaintiff received in December of 2012 rendered him unable to walk and to require a wheelchair to ambulate.

23. After some time at Stroger Hospital where plaintiff recovered from his serious injuries, plaintiff returned to the Cook County Jail in a wheelchair. Defendants Sheriff and Cook County knew that when plaintiff returned to the Jail,

he was a "qualified individual with a disability" protected by the ADA and Rehabilitation Act.

24. When plaintiff returned to the Jail in January 2013, medical personnel employed by defendant Cook County recognized that plaintiff required a wheelchair to move from place to place, that plaintiff required a special toilet, sink, and shower facilities, and that plaintiff must be assigned to a housing unit capable of accommodating his disabilities (an "ADA accessible housing unit").

25. At all times relevant, the Cook County Jail has not had a sufficient number of ADA accessible housing units to house each qualified individual with a disability who enters the Jail.

26. Rather than take any corrective action about the insufficient number of ADA accessible housing units at the Jail, defendant Sheriff has turned a blind eye to the resulting widespread violations of federal law.

27. As a result of the Sheriff's above described deliberate indifference, a correctional officer, to whom the Sheriff has delegated the final authority to make housing assignments, assigned plaintiff to an inaccessible housing unit.

28. Plaintiff is one of the many disabled detainees who was assigned to an inaccessible housing unit because of the Sheriff's decision to accept custody of more disabled detainees than can be housed in the existing accessible units.

29. Plaintiff was deprived the ability to shower and toilet on the same basis as non-disabled detainees and suffered physical injuries, including falls, because he was assigned to an inaccessible housing unit.

30. Following his assignment to inaccessible housing units, plaintiff made numerous oral and written complaints to defendants.

31. Plaintiff demands trial by jury.

It is therefore respectfully requested that judgment be entered in favor of plaintiff and against defendants for appropriate compensatory damages and punitive damages against the individual defendants. In addition, plaintiff requests that the Court grant whatsoever other relief as may be appropriate, including an award of attorney's fees and costs.

/s/ <u>Patrick W. Morrissey</u>
Patrick W. Morrissey
Thomas G. Morrissey, Ltd.
10150 S. Western Ave.
Chicago, Illinois 60643
(773) 233-7900

*Attorneys for Plaintiff*