UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARQUE BOWERS,

    Plaintiff,

  v.

THOMAS DART, Sheriff of Cook County, et al.,

    Defendants.

No. 16 CV 2483

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Marque Bowers brings this action against defendant Thomas Dart, in his official capacity as Sheriff of Cook County. Bowers was in custody at the Cook County Jail when several inmates attacked him. Defendant moves for summary judgment on Bowers's claim that the Sheriff's policy of vertical cross-watching was unconstitutional under 42 U.S.C. § 1983, and that it caused Bowers's injuries. Defendant also moves for sanctions against Bowers and his counsel. For the following reasons, the motion for summary judgment is granted in part, denied in part, and the motion for sanctions is denied.

**I.    Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The

party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *Roh v. Starbucks Corp.*, 2018 WL 663093, at *2 (7th Cir. 2018).

## II. Background

On December 31, 2012, Bowers and his cellmate got into a fight in their cell, while a vertical cross-watching policy was in effect. [126] ¶ 26.[1] Vertical cross-watching was a plan to reduce overtime by having the first-floor officers assigned to the tiers of the housing blocks continuously rotate upwards through the housing blocks, while officers normally assigned to those tiers would take their lunch breaks. [117] ¶¶ 20–21. Later in the evening of December 31, 2012, several inmates attacked Bowers in the hallway. [126] ¶ 28; [113-1] at 32, 123:23–124:4. Bowers is paralyzed and unable to walk because of the attack. [113-1] at 25, 96:7–11. The hallway attack occurred while Officer Steven Rottar was approximately twenty-feet away in "the bubble." [126] ¶ 28; [113-1] at 32, 123:23–124:9; [113-3] at 33, 122:20–23. Bars and electrical panels separate the bubble from the dayroom and the

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number. The facts are largely taken from Bowers's responses to defendant's Local Rule 56.1(a) statements, [117], and defendant's responses to Bowers's Local Rule 56.1(b)(3)(C) statements, [126], where both the asserted fact and the opposing party's response are set forth in one document. Any arguments raised in the Local Rule 56.1 statements, additional facts included in responses or replies, and statements that are unsupported by admissible evidence (or where a party fails to follow Local Rule 56.1's direction to cite to supporting material in the record) will be disregarded. Only facts that are properly controverted will be considered disputed.

hallway, but otherwise, there are minimal obstructions of view or sound. [117] ¶¶ 14–16. Both Bowers and Rottar claim to have personal knowledge of the attack in the hallway, but their accounts of what happened differ.

Bowers says that at approximately 6:00 or 6:30 pm, he told Rottar that he had been in a physical fight with his cellmate.[2] [113-1] at 23, 86:10–89:10. Bowers felt he was in danger because he believed that members of his cellmate's gang were going to attack him; Bowers asked Rottar to separate him from his cellmate and to be moved to a different cell. *Id.* Bowers said that Rottar had already been informed of the situation by other officers, and that Rottar inquired about a move for Bowers, but that a move was not possible that night. *Id.* Bowers says that although Rottar was in the bubble at the time of the second attack in the hallway, Rottar did not see the attack until after the inmates had already badly beaten Bowers. *Id.* at 32, 124:4–125:6. Since Rottar did not see the fight "from the beginning," Bowers thinks that he was not "on his job and doing his duty." *Id.* at 33, 128:9–12. Bowers said he screamed for help for several minutes and since Rottar's reaction to the attack was delayed, Bowers concludes that Rottar was either not paying attention or he ignored the attack. *Id.* at 34, 130:3–16. Moreover, Bowers says it is Rottar's fault for not moving Bowers earlier that night, before the hallway attack occurred. *Id.* at 34, 130:15–16.

By contrast, Rottar says that he was sitting at the officer's desk in the bubble when he heard a fight, stood up, looked into the dayroom, and saw a mass of bodies,

---

[2] This earlier fight in Bowers's cell occurred while the guards employed vertical cross-watching.

which he understood to be a fight, in the hallway near the dayroom. [113-3] at 32, 120:16–121:16. He watched the "mass of bodies" for one to two seconds before making a call on the radio about the fight. *Id.* at 32–33, 121:21–122:7. After Rottar made the radio call, he saw the mass of bodies break up and the inmates who were involved in the attack scattered into the hallway. *Id.* at 33, 122:16–123:14. Correctional staff arrived approximately two minutes after Rottar made the radio call. *Id.* at 33, 125:10–17. Rottar says he learned about Bowers's earlier fight with his cellmate after Bowers was attacked in the hallway. *Id.* at 26, 96:16–98:23. In his incident report, Rottar wrote: "the fight that [the responding officer] called at [8:40 pm] had its beginnings while [the responding officer] was gone and [the responding officer's] tier was covered by the vertical relief officer." [126] ¶ 27. Rottar also opined: "the fight that developed later was a direct result of these action[s], and no officer had been present to intervene. This situation proves to a certain extent, that the detainees can and will take advantage of the fact that officers are not on the tiers for the full 8 hours." *Id.*

Bowers submitted a grievance dated January 3, 2013, in which he asked to "press charges on all of the people who were identified for assaulting [him]" on December 31, 2012. [40-3] at 2. Commander Cozzolino responded to that grievance: "Inmate Bowers identified two inmates as his attackers. . . . CCSPD will contact [Bowers] to press charges for the incident." *Id.* at 3. Bowers was displeased with that response, so he requested an appeal on February 13, 2013, stating: "I identified (7) inmates total. Why only two of them are getting charged?! And not the other

five?!" *Id.* Director of Program Services, Theresa Olson, rejected Bowers's request for an appeal, explaining: "According to incident report, when you were questioned re: the incident, you only identified two attackers." *Id.* Bowers received the rejection of his appeal on February 26, 2013. *Id.* That same day, Bowers submitted another grievance, which he described as "in lieu of and conjunction with" his first grievance. [40-2] at 32. Program Services processed Bowers's second grievance as a "non-grievance." *Id.* Olson responded to the non-grievance: "Your allegations are currently under investigation by the Office of Professional Review,"[3] and Bowers received her response on April 17, 2013. *Id.* at 33.

The Inmate Information Handbook describes the grievance process, but it does not define a non-grievance. [126] ¶ 1. There is no Sheriff's Order, General Order, or other written document that describes how a non-grievance is processed. [117] at 44, 46:20–47:2. Olson says that inmates cannot amend grievances; they can only file a new grievance. *Id.* at 49, 65:22–66:9. Yet, when a grievance is filed fifteen days after the relevant incident, even if the purpose of that grievance is to provide more information about an incident described in an earlier grievance, Program Services processes it as a "non-grievance." *Id.* at 49, 66:11–17. Olson also says that inmates may not appeal non-grievances. *Id* at 46, 54:14–55:7. Even though there was no action that Bowers could take regarding the response to his non-grievance (respond, appeal, etc.) that Program Services would accept, Olson says that the content of Bowers's non-grievance prompted Program Services to refer Bowers's

---

[3] OPR is responsible for investigating employee misconduct and failure to protect claims. [126] ¶ 8.

5

first grievance to OPR. *Id.* at 49, 67:13–68:6. Ultimately, OPR issued a written decision exonerating Rottar of any charges of misconduct related to the hallway attack and Bowers's first grievance. [117] at 97.

## III. Analysis

Defendant offers two bases for his motion for summary judgment. First, that there is insufficient evidence to show that the cross-watching policy caused Bowers's injuries. Second, that the statute of limitations bars Bowers's claim.

### A. Evidence of Causation

To prevail on a *Monell* claim against defendant, Bowers must demonstrate that an official policy, widespread custom, or action by an official with policy-making authority was the "moving force" behind his constitutional injury. *Dixon v. County of Cook*, 819 F.3d 343, 348 (7th Cir. 2016). His theory is that the cross-watching policy caused his injuries. While defendant acknowledges that the cross-watching policy was in place on the day Bowers was attacked, defendant nevertheless maintains that there is not sufficient evidence in the record to show that the policy was the moving force behind Bowers's injury.

There are disputes of material fact as to what caused Bowers's injuries. The parties dispute whether Rottar knew that Bowers had fought with his cellmate before the group of inmates attacked him in the hallway. Rottar explained in an internal report that the hallway attack was a direct result of the fight that occurred

during cross-watching.[4] Based on the record, a reasonable jury could find that but for the cross-watching policy being in effect, the fight between Bowers and his cellmate would not have occurred, and as a result, the hallway attack would not have occurred. Defendant is not entitled to summary judgment on the issue of whether cross-watching was a moving force behind Bowers's constitutional injury.

B. **Statute of Limitations**

Section 1983 does not contain an express statute of limitations. *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001). As such, federal courts apply the forum state's statute of limitations and tolling rules. *Id.* The statute of limitations for a § 1983 claim in Illinois is two years. *Id.* Illinois law also provides that for a § 1983 claim that is subject to the Prison Litigation Reform Act, 42 U.S.C. § 1997e, as is true here, the statute of limitations is tolled while the inmate exhausts his administrative remedies. *Johnson*, 272 F.3d at 522.

Applying those principles, defendant argues that the statute of limitations was tolled until February 13, 2013, when Bowers received a response to his first grievance. Since Bowers did not file his complaint in this action until February 22, 2016, defendant concludes that this action is barred by the statute of limitations. Bowers argues that his grievance was still under administrative review (by OPR) after February 2013. He notes that OPR exclusively handles grievances of staff misconduct, and the last step of that process is the Command Channel Review.

---

[4] Rottar was not present during the first fight, so his causation testimony may not be based on personal knowledge; but the inference he expressed in his internal report is consistent with one that a trier of fact might draw in Bowers's favor.

7

Since the Command Channel Review in Bowers's case was complete in June 2015, he argues that the statute of limitations was tolled until that time. The February 22, 2016 complaint, Bowers asserts, was filed within the limitations period. In reply, defendant points to my previous conclusion that Bowers's second grievance was not timely and that Bowers exhausted his administrative remedies because he grieved within fifteen days of the attack and he appealed the response to that grievance within fourteen days of receiving it. [113-2] at 6, 8–9.[5] Defendant argues that Bowers's claim began to accrue when he fully exhausted his claim.

I agree, in part, with defendant. "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). As stated in the directions on the grievance form, an inmate may file grievances within fifteen days of the event about which he is grieving, and in order to exhaust, an inmate must file an appeal within fourteen days of the date he received a response to his original grievance. [40-3] at 2–3. With the first grievance, Bowers followed these steps. By doing so, he put Cook County Jail on notice, and "once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has

---

[5] I concluded that Bowers's claim against Rottar for the failure to protect Bowers from the attack had not been fairly presented in Bowers's first grievance, and therefore had not been exhausted. The grievance complained about Rottar's failure to respond after the attack, but did not suggest that Rottar had advance warning. The claim against Rottar individually was dismissed without prejudice for failure to exhaust. [113-2] at 7–9. At the time of the ruling, I understood Bowers's *Monell* claim to be that vertical cross-watching prevented a timely response to the hallway attack (not that it caused the cellmate fight, which, in turn, caused the hallway attack), and I held that the first grievance and appeal exhausted the *Monell* claim. *Id.* at 8.

satisfied the purpose of the exhaustion requirement." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).

Bowers's second grievance, however, was untimely. Given that it was filed more than fifteen days after his attack, it was not properly filed, and so Bowers was no longer properly exhausting his administrative remedies. *See Pozo*, 286 F.3d at 1025. The grievance prompted an OPR investigation, but the time OPR spent investigating a complaint is not attributable to administrative exhaustion.[6] OPR investigations are distinct from the inmate grievance process. *Pavey v. Conley*, 663 F.3d 899, 905 (7th Cir. 2011) (holding that participating in an internal-affairs investigation does not exhaust a prisoner's available administrative remedies under the PLRA).[7] The PLRA's exhaustion requirement focuses on remedies available to prisoners; OPR investigations seek to discipline wrongful employees, such investigations do not offer the prisoner a remedy. *Id*. Even if OPR investigations could offer the prisoner a remedy, a prisoner cannot select the avenue to pursue a complaint with prison officials. *Id*. at 906 (citing *Woodford v. Ngo*, 548 U.S. 81, 95 (2006); *Pozo*, 286 F.3d at 1025). As a result, prisoners may only satisfy the exhaustion requirement by adhering to their prison's procedures for filing

---

[6] Earlier in this litigation, defendant suggested that Bowers's claim had not been exhausted while the OPR review was ongoing. [126] ¶ 19. This is inconsistent with defendant's position now. Nevertheless, my own assessment of the procedural history that led to the OPR investigation leads me to conclude that the OPR time did not toll the statute of limitations.

[7] Internal Affairs was the predecessor to OPR. *See Jackson v. Cook County Sheriff Thomas Dart*, 2016 WL 5390954, at *3 (N.D. Ill. 2016).

9

grievances. Bowers properly exhausted his first grievance, but he did not abide by those rules in filing his second grievance.[8]

Once Bowers received the rejection of his appeal of the first grievance, he had exhausted the administrative remedies available to him. The statute of limitations was tolled until February 26, 2013. Since he did not file this lawsuit within two years of that date, the statute of limitations bars this claim.

C. **Sanctions**

Defendant moves for sanctions against Bowers and his counsel for attaching deposition testimony of witnesses from other cases as exhibits to Bowers's Local Rule 56.1 Statement of Additional Facts in violation of Federal Rule of Civil Procedure 37(c). Since Bowers did not disclose Saloman Martinez, Tia Parks, and Daniel Moreci pursuant to Federal Rule of Civil Procedure 26(a) or (e), defendant argues that Bowers should not be able to rely on such testimony and that corresponding portions of his Statement of Additional Facts should be stricken. The undisclosed testimony was not material to the statute of limitations issue, and so I

---

[8] As defendant notes, the first time an OPR investigation was mentioned to Bowers was in the response to his second grievance. Thus, Bowers was not, as he claims, supplementing an OPR grievance when he submitted his second grievance; he was attempting, in contravention of Cook County Jail's rules, to supplement his Program Services grievance. That Program Services elected to refer the first, exhausted grievance, to OPR upon receipt of Bowers's second grievance does not change this fact. Bowers was not told how non-grievances were processed through OPR, and other courts in this district have found that under similar circumstances, administrative remedies were "unavailable" and the inmate was not required to exhaust such procedures. *See Munoz v. Dawalibi*, 2015 WL 719373 (N.D. Ill. 2015); *Harper v. Dart*, 2015 WL 3918944, at *4 (N.D. Ill. 2015). Here, Bowers was not required to prompt an OPR investigation. He satisfied the exhaustion requirement when he completed Cook County Jail's grievance process, of which he was aware, and not when OPR completed its own review of the incident—the initiation of an OPR review through an untimely "non-grievance" was not an available process to Bowers. The statute of limitations was tolled only through Bowers's exhaustion of his first grievance through Program Services.

10

decline to impose any sanctions for harmless tactics. The motion for sanctions is denied.

## IV. Conclusion

Defendant's motion for summary judgment, [114], is granted in part, denied in part, and the motion for sanctions, [123], is denied. Plaintiff's § 1983 claim against Sheriff Dart is untimely.

ENTER:

Manish S. Shah
United States District Judge

Date: February 13, 2018