IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Marque Bowers,<br><br>      *Plaintiff,*<br><br>-vs-<br><br>Thomas Dart, Sheriff of Cook County, and Cook County, Illinois,<br><br>      *Defendants.* | 16-cv-2483<br><br>Judge Shah |

# PLAINTIFF'S POST-TRIAL MOTION PURSUANT TO RULES 50(b) AND 59

Plaintiff Marque Bowers, by counsel, moves the Court for relief under Rules 50(b) and 59 of the Federal Rules of Civil Procedure.

Grounds for this motion are as follows:

1. Plaintiff Marque Bowers alleges defendant Dart violated his rights under the Americans with Disabilities Act (ADA) by assigning him to various living units at the jail that did not comply with federal accessibility standards from January 6, 2013 to August 21, 2014.

2. After a four day trial, a jury returned a verdict for defendant on October 3, 2019. ECF No. 219, Jury Verdict. The Court reserved ruling on plaintiff's motion for a directed verdict pursuant to Rule 50(a). ECF No. 217, Minute entry.

3. For the reasons below stated, the Court should grant plaintiff's motion pursuant to Rule 50(b) or Rule 59 and reset this case for a jury to determine damages, if any, to award Bowers. In the alternative, the plaintiff requests a new trial on liability and damages.

## I. Legal standard

4. On a motion for judgment as a matter of law under Rule 50, "the question is not whether the jury believed the right people, but only whether it was presented with a legally sufficient amount of evidence from which it could reasonably derive its verdict." *Massey v. Blue Cross-Blue Shield of Ill.*, 226 F.3d 922, 924 (7th Cir. 2000). A court must determine whether the evidence presented at trial, when viewed in the light most favorable to the non-moving party is sufficient to support the verdict. *Id.* A "mere scintilla" of evidence is not sufficient to sustain a verdict, *id.,* but judges are not to substitute their view of the contested evidence in place of the jury's determination. *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004). In other words, the test is whether "no rational juror could have found for the prevailing party." *Turner v. Miller*, 301 F.3d 599, 602 (7th Cir. 2002).

5. Under Rule 59, a new trial may be granted after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed.R.Civ.P. 59(a)(1)(A). "A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014) (citing *Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012)).

## II. Qualified individual with a disability

6. To prevail on his ADA claim, Bowers must prove by a preponderance of the evidence he is a qualified individual with a disability. *See* ECF No. 216, Jury

Instructions at 19. The Court reviewed this standard when considering plaintiff's motion for summary judgment:

> Under the ADA, an individual has a "disability" if he can show one of the following: (1) he has a physical or mental impairment that substantially limits one or more of his major life activities, (2) he has a record of such an impairment, or (3) he is regarded as having such impairment. 42 U.S.C. § 12102; *see also* 28 C.F.R. § 35.101 ("The primary object[ive] . . . should be whether entities covered under the ADA have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of 'disability.' The question of whether an individual meets the definition of 'disability' […] should not demand extensive analysis.").

*Bowers v. Dart*, 2017 WL 4339799, at *4 (N.D.Ill. 2017).

7. Bowers testified that he has been unable to walk following an attack at the jail on December 31, 2012. ECF No. 222, V3 Bowers at 111:6-112:17, 113:25-117:17 (explaining functional capacity following injury).

8. Dr. Andrew DeFuniak, a primary care provider, treated Bowers approximately 25 times from January 2013 to August 2014. ECF No. 222, V3 DeFuniak 19:12-15, 80:1-11. Dr. DeFuniak said lower extremity muscle power is necessary to walk, ECF No. 222, V3 DeFuniak at 86:15-21, and that a person with Bower's lower extremity strength would not be able to walk. ECF No. 222, V3 DeFuniak at 95:19-23. Based on Bowers's lower extremity strength, Dr. DeFuniak prescribed a wheelchair for Bowers to ambulate. ECF No. 222, V3 DeFuniak at 95:24-96:4. And in response to a question whether he considered Bowers to be disabled, Dr. DeFuniak said "I considered him to have, you know, some condition that, you know, required a wheelchair, yes. That's what he told me, yes." ECF No. 222, V3 DeFuniak at 70:12-15. Because of this assessment, Dr. DeFuniak entered an

"alert" for Bowers to be permitted to use a wheelchair at all times to ambulate. ECF No. 222, V3 DeFuniak at 77:1-12.

9. Daniel Moreci, a Sheriff's employee, was the first assistant to the executive director at the jail from 2013 and 2014 and testified the Sheriff relies on doctors to determine whether an inmate needs a wheelchair. ECF No. 221, V1 Moreci at 4:8-18, 12:22-24. Moreci stated an inmate with a wheelchair alert would be regarded by the Sheriff as needing a wheelchair. ECF No. 221, V1 Moreci at 36:23-37:1. And while Bowers was detained at the jail with a wheelchair alert, Moreci agreed, based on his knowledge, the Sheriff's staff regarded Bowers as disabled. ECF No. 221, V1 Moreci at 12:25-13:3. Matthew Burke, another high ranking Sheriff employee, stated the Sheriff relies on the medical staff to determine whether an inmate is disabled and that from January 2013 until August 2014, the Sheriff treated Bowers as a wheelchair dependent inmate. ECF No. 221, V1 Burke at 39:24-40:5, 57:11-59:12.

10. Dr. DeFuniak unequivocally said Bowers's legs were too weak to walk. Based on Dr. DeFuniak's testimony, no reasonable finder of fact could determine Bowers did not have a substantial limitation walking. *See* 42 U.S.C. § 12102(2)(A). This is so because some "types of impairments, as a factual matter, virtually always [will] be found to impose a substantial limitation on a major life activity." 28 C.F.R. § 35.108(d)(2)(ii). This includes "mobility limitations requiring the use of a wheelchair." *Id.* § 35.108(d)(2)(iii)(D).

11. And there can be no question that defendant regarded Bowers as disabled. The Sheriff relied exclusively on the medical staff to identify disabled in-

mates and to enter appropriate "alerts" to provide notice about certain impairments. Indeed, both Moreci and Burke stated that Bowers was regarded a dependent on a wheelchair to move from place to place. Accordingly, no reasonable jury could conclude that Bowers was not disabled.

### III. Inaccessible housing assignments

12. In *Tennessee v. Lane*, 541 U.S. 509, 532 (2004), the Court explained "[i]n the case of facilities built or altered after 1992, the [Title II] regulations require compliance with specific architectural accessibility standards."

13. The 1991 Standards state that "[a]ccessible toilet stalls . . . shall meet the requirements of 4.17," which include the requirement that [g]rab bars . . . shall be provided." 1991 Standards § 4.17.6. Moreover, the Standards require an accessible shower to have a mounted shower seat. *See e.g.*, 1991 Standards § 4.21.3 ("A seat shall be provided in the shower stalls . . . [and] [t]he seat shall be mounted from the bathroom floor and shall extend the full depth of the stall.").

14. During plaintiff's detention in Cermak on 3 West and 3 North there is no dispute the showers did not comply with the ADA structural standards.[1] Neither shower room had a fixed bench. ECF No. 222, V3 Bowers at 131:12-14 (3 West no fixed bench); ECF No. 223, V4 Rivero-Canchola at 57:2-7 (3 West no fixed bench); ECF No. 224, V2 Burke at 11:2-11 (reading from the Justice Department Barriers report "[t]he gang shower does not have any accessible features" on 3

---

[1] The Cermak Infirmary was built in 1998. ECF No. 224, V2 Burke at 4:9-10. Buildings constructed after 1991 must comply with the certain federal architectural standards. ECF No. 224, V2 Burke at 4:14-17.

North in 2012); ECF No. 222, V3 Bowers at 143:7-19 (Bowers explaining he used the 3 North and 3 West shower room in a similar manner).

15. While assigned to 3 West and 3 North, Bowers showered by transferring from his wheelchair to shower chair that resembled a wheelchair. ECF No. 222, V3 Bowers at 131:1-133:16. Bowers said it was difficult to shower because the chair's brakes were inoperable making it difficult to keep the wheelchair stationary on a "wet, slippery shower floor." ECF No. 222, V3 Bowers at 133:19-23. Bowers testified he filed a grievance on September 18, 2013 because of a fall in the 3 West shower while attempting to transfer to the designated shower chair.[2] ECF No. 222, V3 Bowers at 133:24-134:18; Plaintiff's Trial Exhibit 21, Pages 2, 4-5.

16. On February 21, 2014, Bowers was reassigned to Cermak 3 South where he remained until August 21, 2014. ECF No. 222, V3 Bowers at 139:14-18. On 3 South, Bowers was assigned to a single person cell, ECF No. 222, V3 Bowers at 140:7-15, which had a shower compartment similar to the photograph depicted below and admitted into evidence as Plaintiff's Trial Exhibit 26, Page 9:

---

[2] Dr. DeFuniak treated Bowers for this fall in August 2013. ECF No. 222, V3 DeFuniak at 69:20-25. In August, September, and October, Dr. DeFuniak counseled Bowers about the availability of a personal care attendant to assist in the shower. ECF No. 222, V3 DeFuniak at 72:6-73:14.



Plaintiff's Exhibit 26 Page 9

ECF No. 222, V3 Bowers at 140:21-141:15; Plaintiff's Trial Exhibit 26, Page 9.

17. Bowers was unable to enter the 3 South shower with the wheelchair issued by Dr. DeFuniak because it was too wide to fit through the entryway of the shower. ECF No. 222, V3 Bowers at 141:16-20. Upon request from Bowers, Dr. DeFuniak issued a shower chair for Bowers to use on 3 South. ECF No. 222, V3 Bowers at 141:21-25; ECF No.222, V3 DeFuniak at 17:9-13. Bowers, however, was unable to propel independently with the 3 South shower chair due to the small size of the wheels and, as a result, relied on the nurses for assistance entering the shower compartment. ECF No. 222, V3 Bowers at 142:8-143:6.

18. Bowers also spent nearly the entire period in Cermak without the benefit of an accessible toilet and sink.[3] In order to use the inaccessible toilet Bowers had to touch the rim of the toilet and shimmy his body over the toilet seat because there were no grab bars to assist with transferring and the space was limited. ECF No. 222, V3 Bowers at 124:17-125:9. The location of the toilet also

---

[3] From December 16, 2013 to January 10, 2014, Bowers was assigned to cell 3215, an accessible cell, on Cermak 3 West. ECF No. 222, V3 Bowers at 125:24-128:11.

limited Bowers's ability to use the sink which led him to rely on other inmates to fill up a water basin so that he could wash up. ECF No. 222, V3 Bowers at 123:1-124:12. Bowers testified the toilet and sink appeared similar to Plaintiff's Trial Exhibit 26, Page 2, which is reproduced below:



Plaintiff's Exhibit 26 Page 2

ECF No. 222, V3 Bowers at 117:18-118:8.

19. The Seventh Circuit stated in *Lacy v. Cook County*, 897 F.3d 847, 853 (7th Cir. 2018), that "[p]erhaps the most obvious example of such discrimination is when structural barriers prevent people with disabilities from accessing otherwise available public services."

20. As the Court carefully considered:

The purpose of the ADA is to "assure equality of opportunity, full participation, independent living, and economic self-sufficiency" for individuals with a disability. *See* 42 U.S.C. § 12101. The requirements outlined by the 1991 ADA Standards, the UFAS, and the 2010 ADA Standards are all in keeping with this broader purpose – mandating the installation of grab bars near a toilet and of a mounted seat in a shower promotes a disabled person's ability to use those facilities independently, much like a non-disabled person

> would. The accommodations that defendants say they provided
> Bowers – (1) portable toilet and shower chairs along with nurses
> who were available to detainees who needed assistance in using
> the chairs, *see* [99] at 19-20; and (2) access to a communal ADA-
> compliant toilet upon request, per RTU policy, *id.* at 19 (citing *Flora
> v. Dart*, No. 15 C 1127, 2017 WL 2152392, at *5 (N.D. Ill. May 17,
> 2017)) – stand in stark contrast to the grab bars and mounted
> shower seat, because such "accommodations" do not allow Bowers
> to use the jail's facilities independently or similarly to how a non-
> disabled person would use similar facilities.

*Bowers*, 2017 WL 4339799, at *6.

21. The uncontroverted evidence is Bowers was deprived the ability to shower on the same basis as non-disabled inmates because the group showers on 3 West and 3 North along with the shower compartment in Bowers's 3 South cell did not meet the structural elements required by the ADA. No reasonable jury could conclude otherwise.

22. Defendant's offer of shower chairs along with the availability of assistance upon request from the nursing staff, as a matter of law, did not promote a disabled person's ability to use the showers independently, much like a non-disabled person would. The shower chair available on 3 West and 3 North resembled a wheelchair, was difficult to use, and caused Bowers to fall. Similarly, the 3 South shower chair did not allow Bowers to shower independently because he was unable to propel the chair independently and was dependent on the nursing staff to roll him into the shower. *See Bowers*, 2017 WL 4339799, at *6; *Clemons v. Dart*, 168 F.Supp.3d 1060,1065-69 (N.D. Ill. 2016) (Tharp, J.); *Flora v. Dart*, 2017 WL 2152392, at *3-6 (N.D. Ill. 2017) (Kennelly, J.) (vacated by agreement of the parties); *Roberts v. Dart*, 2018 WL 1184735 at * 4 (N.D. Ill. 2018) (Lee, J.) (policy to allow amputee to exit his non-ADA compliant cell and

use a dayroom ADA compliant toilet "rendered him so completely dependent on others" to be able to use the toilet and did not provide equivalent access to toilet).

23. Bowers was also denied access to the jail's toilets and sinks because they did not comply with the structural standards required by the ADA. No reasonable jury could conclude otherwise.

24. The failure to provide Bowers with showers, toilets, and sinks that satisfied federal structural standards was perhaps "the most obvious example of such discrimination," *Lacy*, 897 F.3d at 853, and violated the plaintiff's federally protected rights. No reasonable fact finder could find otherwise.

### IV. Intentional discrimination

25. To recover compensatory damages under the ADA, Bowers must show that defendant discriminated against him intentionally. *Lacy,* 897 F.3d at 862-63. This standard requires "both (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Id.* at 863.

26. Here, defendant had notice of a duty to comply with the ADA structural requirements based on the very existence of the statute and regulations. To remove any doubt about defendant's knowledge, the Sheriff entered into an agreed order in 2010 to place disabled inmates in accessible cells. ECF No. 221, V1 Moreci at 27:8-14; ECF No. 221, V1 Burke at 40:11-41:23. And Burke testified the Sheriff designed him as the point person to the Department of Justice and federal monitors to oversee compliance with the agreed order. ECF No. 221, V1 Burke at 41:18-23. Moreover, in 2012, before Bowers entered Cermak in a

wheelchair, the Department of Justice notified defendant the 3 North shower did not have any accessible features. ECF No. 224, V2 Burke at 8:10-11:13.

27. Defendant Sheriff also had notice that Bowers required an accessible toilet, sink, and shower to take care of everyday life activities:

    a. On March 19, 2013, Bowers filed a grievance with the Sheriff explaining structural barriers prevented him from using the toilet, sink, and shower. Plaintiff's Trial Exhibit 21, Pages 19-20; ECF No. 222, V3 Bowers at 128:15-130:15. In response to this grievance, the Sheriff's designee wrote "Inmate Bowers's concerns have been noted and are in the process of being addressed. Plaintiff's Trial Exhibit 21, Page 20; ECF No. 222, V3 Bowers at 130:10-18.

    b. Bowers dated a grievance September 18, 2013 complaining of a fall in the 3 West shower caused by a broken shower chair. ECF No. 222, V3 Bowers at 133:24-134:18; Plaintiff's Trial Exhibit 21, Pages 2, 4. In response to this grievance, the Sheriff's designee wrote: "Shower chair has been replaced." Plaintiff's Trial Exhibit 21, Page 5; ECF No. 222, V3 Bowers at 135:20-23.

    c. Bowers wrote a grievance on February 19, 2014 complaining he used a wheelchair and was unable to make it to his cell toilet due to overcrowding. Plaintiff's Trial Exhibit 21, Page 13; ECF No. 222, V3 Bowers at 137:19-138:23.

28. Bowers's grievances along with the Sheriff's knowledge from the Department of Justice regarding structural barriers in Cermak is ample evidence defendant knew a harm to a federally protected right to Bowers was substantially likely. *See Bowers*, 2017 WL 4339799 at *8.

29. The undisputed evidence is that the Sheriff failed to act upon the likelihood that Bowers's federally protected rights would be violated.

30. First, Burke testified regular accountability meetings were held by Sheriff Dart with high ranking members of the Department of Corrections between 2013 and 2014. During this period, meeting participants did not discuss the housing of wheelchair users in accessible cells. ECF No. 221, V1 Burke at 76:8-78:6; ECF No. 221, V1 Moreci at 27:19-8:9 (confirming weekly accountability meetings and no recollection of a discussion of housing wheelchair users in accessible cells).

31. Second, there is no dispute that defendant had notice by April 2, 2013, the date Bowers's grievance was collected (*see* Plaintiff's Trial Exhibit 21, Page 19), that Bowers was unable to use the toilet, sink, and toilets because of his disability. That Bowers continued to be housed in inaccessible conditions until August 21, 2014, is clear evidence defendant failed to act upon the likelihood that Bowers's federally protected rights would be violated.

32. Third, by the summer of 2013 Dr. DeFuniak stated there was no medical justification to house Bowers in Cermak. ECF No. 222, V3 DeFuniak at 97:21-98:2. Dr. DeFuniak conveyed this information to the Sheriff by entering an "alert" that Bowers did not require to be housed in Cermak.[4] ECF No. 222, V3 DeFuniak at 98:3-10. The Sheriff, however, took no action to relocate Bowers and kept him in Cermak until August 2014. ECF No. 222, V3 DeFuniak at 98:11-15.

---

[4] According to Dr. DeFuniak, Bowers "could have been housed in a wheelchair room in another division, yes." ECF No. 222, V3 DeFuniak at 99:9-13. Sabrina Rivero-Cachola, the Sheriff's ADA Compliance Officer, testified Division 2 was a living unit at the jail designated by the Sheriff to house wheelchair users. ECF No. 223, V4, Rivero-Canchola at 29:10-13, 81:19-82:23.

33. Fourth, defendant's offer of "non-equivalent 'accommodations' support, rather than counter, a finding of deliberate indifference." *See Bowers*, 2017 WL 4339799, at *8.

34. For the reasons above stated, defendant knew a harm to a federally protected right was substantially likely and defendant failed to act upon that likelihood. No reasonable juror could find otherwise.

## V. Conclusion

It is therefore respectfully requested that the Court issue relief under Rule 50(b) of the Federal Rules of Civil Procedure holding, as a matter of law, (1) Bowers is disabled, (2) plaintiff's rights under the ADA were violated during the period of January 6, 2013 and August 21, 2014, because he did not have access to toilets, sinks, and showers, as required by the 1991 ADA, and (3) that defendant intentionally discriminated against Bowers. Plaintiff also requests that the Court order a new trial to determine the damages, if any, to award Bowers. In the alternative, plaintiff requests a new trial in accordance with Rule 59 of the Federal Rule of Civil Procedure.

Respectfully submitted,

/s/ Patrick W. Morrissey
Thomas G. Morrissey, Ltd.
10150 S. Western Ave., Ste. Rear
Chicago, IL 60643
(773)233-7900

*an attorney for plaintiff*