UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARQUE BOWERS,

        Plaintiff,

    v.

THOMAS DART, et al.,

        Defendants.

No. 16 CV 2483

Judge Manish S. Shah

## ORDER

Plaintiff's motion for a directed verdict and post-trial motions, [213] [225], are denied.

## STATEMENT

After his other claims were resolved against him on motions for summary judgment, [68], [69], [132], plaintiff Marque Bowers proceeded to trial on his Americans with Disabilities Act discrimination claim against defendants Sheriff Thomas Dart and Cook County.[1] During trial, Bowers voluntarily dismissed his claims against Cook County. [215]. Both parties moved for judgment as a matter of law. [212]; [213]. I denied Dart's motion and took Bowers's under advisement. [217]. The jury returned a verdict in Dart's favor. [219]. Bowers thereafter filed a renewed motion for judgment as a matter of law and for a new trial. [225].

A court may grant a motion for judgment as a matter of law so long as the non-moving party was fully heard on an issue during a trial and so long as, under the governing law, no reasonable jury would have had a legally sufficient evidentiary basis to rule in the non-moving party's favor. Fed. R. Civ. P. 50(a)(1); *Karma Int'l, LLC v. Indianapolis Motor Speedway, LLC*, 938 F.3d 921, 925 (7th Cir. 2019). Motions under Rule 50(a) that are not granted can be decided after the jury's verdict. Fed. R. Civ. P. 50(b). A party must renew any motion under Rule 50(a) after the conclusion of the trial if it wishes to preserve a sufficiency of the evidence challenge to the verdict, *Stegall v. Saul*, 943 F.3d 1124, 1127 (7th Cir. 2019), and may, at the same time, request a new trial under Rule 59. Fed. R. Civ. P. 50(b).

Rule 50 sets a "high bar." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 601 (7th Cir. 2019), *reh'g and suggestion for reh'g en banc denied* (Sept. 16, 2019). The

---

[1] Bracketed numbers refer to entries on the district court docket.

nonmoving party is entitled to the benefit of every inference. *Id.* The court must consider the entire trial record, but must disregard any evidence that is favorable to the moving party that the jury was not required to believe. *Id.* In practice, that means that the court accepts "all evidence in the nonmovant's favor plus the uncontradicted and unimpeached testimony from disinterested witnesses." *Id.* (citations omitted). Credibility is not assessed and evidence is not weighed. *Id.*; *Martin v. Milwaukee Cty.*, 904 F.3d 544, 550 (7th Cir. 2018). The verdict must be supported by more than a "mere scintilla" of evidence. *Martin*, 904 F.3d at 550. The court's job is "to decide whether a highly charitable assessment of the evidence supports the jury's verdict or if, instead, the jury was irrational to reach its conclusion." *Bodum USA, Inc. v. A Top New Casting Inc.*, 927 F.3d 486, 491 (7th Cir.), *cert. denied,* 140 S. Ct. 675 (2019). "It takes a lot to set aside a jury verdict." *Valdivia v. Twp. High Sch. Dist. 214*, 942 F.3d 395, 396 (7th Cir. 2019).

On December 31, 2012, some inmates at Cook County Jail attacked Bowers and broke some bones in his back. After the attack, Bowers used a wheelchair to get around the jail, one prescribed to him by Cook County medical personnel. The Sheriff ran the jail, but did not supervise the medical staff. The Sheriff assigned Bowers to cells where he did not have access to toilets and showers that could be used independently by persons in wheelchairs. To prove his claim for damages based on disability discrimination against the Sheriff, Bowers had to prove by a preponderance of the evidence that he was a "qualified individual with a disability," that he was denied "the benefits of the services, programs, or activities of a public entity," that the denial or discrimination was because of his disability, and the discrimination was intentional. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015); *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012); *Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 856–57 (7th Cir. 2018).

An individual has a "disability" if he (1) has a physical or mental impairment that substantially limits one or more of his major life activities, (2) has a record of such an impairment, or (3) is regarded as having such impairment. 42 U.S.C. § 12102(1). Only someone that suffers from such a disability may invoke the Act's protection. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 523 (7th Cir. 1996); *Povey v. City of Jeffersonville, Ind.*, 697 F.3d 619, 624 (7th Cir. 2012).

*Impairment*

A reasonable jury could have found that Bowers did not have a physical impairment. Some impairments almost always impose a substantial limitation on major life activities, among them those that require the use of a wheelchair. 28 C.F.R § 35.108(d)(2)(iii)(D). But the factual dispute here was not over whether Bowers used a wheelchair—it was over whether Bowers was lying about needing one. If a

reasonable jury could have concluded that Bowers was feigning his impairment, then a reasonable jury could have concluded that Bowers was not disabled.

There was no medical explanation for Bowers's claimed physical inability to walk.[2] Dr. DeFuniak testified that the imaging work performed by the trauma team was not able to identify any neurologic injury and that he had never before seen someone with Bowers's injury (an L1-to-L4 transverse process fracture) be unable to walk as a result of that injury. [222] at 27:23–28:18. Another doctor (Dr. Raksin) testified that a transverse process fracture (which involves the "little nubbin that extends out to either side of a vertebral body") cannot unto itself cause paralysis and that she would not have anticipated that a patient with only that injury would have any neurologic deficit. [226] at 10:7–17. Bowers admitted to moving his leg in a video taken immediately after the attack, [222] at 184:23–25, and refused MRI and EMG testing because of his pending federal lawsuit. [222] at 185:6–16. A jury could reasonably credit this evidence and conclude that Bowers did not have a physical impairment that limited his ability to walk. In other words, a reasonable jury could have concluded that he was faking his impairment.

There was testimony that Bowers's muscles had become weak from lack of use. Dr. DeFuniak testified that, by May of 2013, Bowers's hip muscles had become so weak that he would not have expected Bowers to be able to walk. [222] at 95:12–96:1. But a reasonable jury could have concluded that this was not an impairment but a choice, and a jury could infer that because there was nothing stopping Bowers from using those muscles if he wanted to use them, he could recover from the weakness. Without an underlying physiological disorder or condition, Bowers did not have an impairment protected by the ADA. *See Richardson v. Chicago Transit Auth.*, 926 F.3d 881, 887 (7th Cir. 2019).

At the heart of this case lies a significant credibility determination: whether Bowers is lying about being unable to walk. Having presented that issue to a jury and lost, Bowers needs "a lot" to undo it. *Valdivia*, 942 F.3d at 396. His motion ignores evidence that suggests he was lying about having the impairment, relies mostly on a few lines from one doctor's testimony to draw inferences in his favor, and never manages to show that a reasonable jury, relying on the evidence that was presented, could not have bought Dart's argument—which was that Bowers was lying and that the jail mollified him by giving him a wheelchair out of expedience. A reasonable jury

---

[2] Bowers has not argued that he suffered from a mental impairment that limited one or more of his major life activities.

3

could have found that Bowers did not have a physical impairment that limited his major life activities.[3]

*Regarded as Having an Impairment*

The ADA also protects people that are "regarded as" having an impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1)(C). An individual is "regarded as" having a qualifying impairment if he or she was subjected to a prohibited action "because of … [a] perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. §§ 12102(1)(C), 12102(3)(A). "To meet the 'regarded as' prong, the [defendant] must believe, correctly or not, that the [plaintiff] has an impairment that substantially limits one or more of the major life activities." *Povey v. City of Jeffersonville, Ind.*, 697 F.3d 619, 622 (7th Cir. 2012).

Bowers says that the evidence at trial showed that Dart regarded Bowers as disabled and that no reasonable jury could have concluded otherwise. [225] at 4–5. The Sheriff's office allowed Bowers to use a wheelchair, and it did so because it entrusted the task of determining whether inmates needed wheelchairs to Cook County's medical staff. One Sheriff's office employee (Daniel Moreci) testified that the Sheriff's office deferred to the medical staff with regards to whether an inmate needed a wheelchair and that, once a wheelchair alert was issued by the medical staff, the Sheriff's office regarded the inmate as needing a wheelchair. [221] 12:22–24; 36:10–37:1.[4] Another Sheriff's office employee (Matthew Burke) confirmed that the Sheriff

---

[3] Bowers's motion for judgment as a matter of law, [213], never mentions the "record of … an impairment" portion of the definition of disability. 42 U.S.C. § 12102(1)(B). His renewed motion for judgment as a matter of law quotes all three definitions of "disability" but never elaborates on how the evidence at trial established that Bowers had a "record of … an impairment." [225] at 3. Usually, that requires a showing of "a history of ... a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k); *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 748 (7th Cir. 2011). If a plaintiff's condition "fails to fall within the definition of impairment set forth in § 12102(2)(A)," that plaintiff cannot assert that a record of the same condition was the reason behind his or her discriminatory treatment. *Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship*, 209 F.3d 678, 683 (7th Cir. 2000).

[4] When plaintiff's counsel asked Dr. DeFuniak whether he considered Bowers to be disabled, Dr. DeFuniak responded, "I considered him to have, you know, some condition that, you know, required a wheelchair, yes. That's what he told me, yes." *See, e.g.*, [222] at 70:12–15. Dr. DeFuniak later clarified that he was using the term "disabled" as a medical term, and that anyone endorsing to him that they were not functioning at "one hundred percent" (including someone with a sprained ankle) would, according to his definition, have "some level of disability." *See* [222] at 102:20–103:14. *See also* [222] at 22:13–18 (when plaintiff's counsel asked Dr. DeFuniak whether he ever found "any medical evidence to suggest that

4

relies on medical staff to determine whether an inmate is disabled, [221] at 57:11–23, and that, from January 2013 until August 2014, the Sheriff's office treated Bowers as wheelchair dependent. *Id.* at 57:24–59:12.

The jury could have found that the Sheriff's office regarded Bowers as disabled because it believed he needed a wheelchair. But it was not compelled to reach that conclusion. Dr. DeFuniak never outright testified that Bowers needed a wheelchair because he lacked the capacity to move his legs. Instead, he said that Bowers had "some condition" that required a wheelchair, and a reasonable inference (drawn in favor of the jury's determination) is that Dr. DeFuniak's equivocation meant only that Bowers did not suffer from a physical impairment and that, rather than attempt to diagnose and treat whatever it was that was causing him to refuse to walk, it would be easier to just give him a wheelchair.

A reasonable jury could have concluded that Dr. DeFuniak (and the other doctors) prescribed Bowers a wheelchair not because they perceived him as impaired, but because the doctors knew that Bowers would refuse to walk and that the wheelchair was an expedient compromise. A reasonable jury also could have concluded that Dart went along with the doctors' prescriptions for the same reason. Dr. DeFuniak testified that the results of much of the testing that was performed on Bowers suggested that Bowers should have been able to move his legs. *See* [222] at 27:19–28:18; 29:6–10. Another doctor was perplexed as to why Bowers claimed to be unable to walk, [226] at 10:7–11:4, and there was video evidence of Bowers moving his legs after the attack in question. [222] at 184:23–25. Bowers also had incentives to exaggerate his symptoms (many of them perfectly understandable—including the fear that he might suffer yet another physical assault like the one that broke his back—but each of them tending to suggest that he was not telling the truth about being unable to walk). It "takes a lot to set aside" a verdict, and Bowers has failed to show that the evidence here compels a different result than the one the jury reached. *See Valdivia v. Twp. High Sch. Dist. 214,* 942 F.3d 395, 396 (7th Cir. 2019).

The jury received an instruction that tracked Seventh Circuit Pattern Jury Instruction 4.04 and said that a person is "regarded as" having a disability if "[t]he person does not have any impairment, but the correctional facility treats him as

---

[Bowers] needed a wheelchair," Dr. DeFuniak responded "I mean, it was based on basically what his complaints were and exam where he, you know, he was not able – told me he was not able to move or walk, so – I mean, we provided a wheelchair based on that, yes."). Dr. Raksin's testimony also suggested that she believed Bowers was not disabled but was nonetheless prescribed a wheelchair. *See* [222] at 75:11–76:3 (when asked by plaintiff's counsel whether she had any opinion about whether Bowers needed a wheelchair to move from place to place from January of 2013 to July of 2013, Dr. Raksin replied, "[o]ther than documenting that he was seated in a wheelchair, no.").

having an impairment that substantially limits his ability to walk." [216] at 20–21; Seventh Circuit Pattern Jury Instruction § 4.04. Giving Bowers a wheelchair was like treating him as having an impairment, but that was not the only conclusion that could be drawn from the evidence. Instead of treating Bowers as having an impairment, the Sheriff's office treated him as a malingerer without any genuine perception of disability—or so a jury could find.

The "regarded as" definition protects people that have been discriminated against "because of myths, fears and stereotypes associated with disabilities." Seventh Circuit Pattern Jury Instruction § 4.04, Comment G (quoting *Amadio v. Ford Motor Co.*, 238 F.3d 919, 925 (7th Cir. 2001)). It seeks to prevent the harmful effects of unfounded prejudices. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999) ("it is necessary that a covered entity entertain misperceptions about the individual")[5]; 29 C.F.R. § 1630.2(l). The statute is not intended to protect malingerers. The Sheriff's office could have given Bowers a wheelchair even though it did not believe he was impaired, so the wheelchair prescription did not compel the jury to find Bowers disabled. *See Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 335 (7th Cir. 2004) (if employers accommodate for other reasons, then the fact of accommodation does not support an inference that a given employer must have regarded a given employee as disabled).

Because the jury could reasonably find that Bowers was not disabled within the meaning of the ADA, he was not entitled to invoke the protections of that Act to seek damages for his placement in cells with inaccessible toilets, sinks, and showers, and the jury's verdict stands. *See Weiler v. Household Fin. Corp.*, 101 F.3d 519, 523 (7th Cir. 1996); *Povey v. City of Jeffersonville, Ind.*, 697 F.3d 619, 624 (7th Cir. 2012) ("[h]aving failed to meet her burden to demonstrate that she was disabled under the ADA, Povey is not protected by its provisions"); *Powers v. USF Holland, Inc.*, 667 F.3d 815, 825 (7th Cir. 2011).

For that reason, I do not reach the parties' arguments about whether a person "regarded as" having a disability is entitled to a reasonable accommodation or whether the evidence supported a finding that Bowers received equivalent access to facilities. *But see Powers v. USF Holland, Inc.*, 667 F.3d 815, 823 n.7 (7th Cir. 2011) ("the ADAAA clarified that an individual 'regarded as' disabled (as opposed to actually disabled) is not entitled to a 'reasonable accommodation'"); 42 U.S.C.

---

[5] The ADA Amendments Act of 2008 overturned certain portions of *Sutton*'s holding and broadened the scope of the meaning of "regarded as." *See* ADA Amendments Act of 2008, Pub. L. No. 110–325, 122 Stat 3553; *Richardson v. Chicago Transit Auth.*, 926 F.3d 881, 889 (7th Cir. 2019). Those amendments did not change the language in *Sutton* and other cases that makes clear that the employer or public entity must believe, rightly or wrongly, that the plaintiff has an impairment.

12201(h); *see* 28 C.F.R. § 35.151(c)(1); *Tennessee v. Lane*, 541 U.S. 509, 532 (2004); *Lacy v. Cook County*, 897 F.3d 847, 853 (7th Cir. 2018).

*Intentional discrimination*

Even if Bowers were disabled (or regarded as disabled) as a matter of law, his motion fails because a reasonable jury could have found that Dart did not discriminate against him intentionally. *Lacy v. Cook County,* 897 F.3d 847, 862–63 (7th Cir. 2018). A plaintiff can establish intentional discrimination under the ADA by showing that the defendant was deliberately indifferent to a known right. *Id.* Deliberate indifference requires "both (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Id.* at 863.

Bowers filed multiple grievances alerting the Sheriff that the conditions in his cell were unsafe. *See, e.g.*, [225-1] at 2, 4; [222] at 128:15–19, 133:24–134:18, 137:14–138:23. And the Sheriff held accountability meetings to determine whether and how demands related to the ADA were being met. [221] at 76:8–78:6; [221] at 27:19–28:9. There was also evidence that Bowers could have been relocated to a wheelchair-accessible room in another division. [222] at 97:2–98:2; 99:9–13. In other words, there was evidence that the Sheriff's office was aware of a substantial likelihood that a disabled inmate's federally protected rights might be harmed. There was also evidence that the Sheriff took no action to relocate Bowers until August of 2014, [222] at 98:11–15, despite testimony from doctors that he could have been moved sooner. *Id.* at 97:23–98:10. Dart points out that Bowers could not have been moved any sooner because all of the other ADA-compliant cells were already full. [223] at 42:10–22, 85:15–22. And Dart points out that his office was essentially a tenant in a building that it had no ability to modify. [223] at 49:8–14. These are excuses that explain the failure to accommodate Bowers, but do not exculpate the Sheriff's office from knowing about a problem and failing to act on it. Nonetheless, Dart did form a task force to address the issue. *See* [221] at 76:8–7:8. Although the weight of the evidence tended to favor Bowers on the issue of deliberate indifference, the evidence was not so lopsided that Dart's intent was established as a matter of law. A reasonable jury could have relied on the evidence of Dart's attention to ADA compliance to conclude that Dart did not fail to act—he did not succeed in accommodating Bowers with a wheelchair-accessible toilet, sink, and shower, but not because he was deliberately indifferent to Bowers's rights under the ADA.

*Motion for a New Trial*

Under Rule 59, a district court may order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A), *Martinez v. City of Chicago,* 900 F.3d 838, 844 (7th Cir. 2018).

Bowers's motion never identifies any specific reason he believes a new trial is justified (apart from the need to determine damages, [225] at 13, which is not necessary because, as discussed above, a reasonable jury could have ruled against Bowers as to the issue of liability.)

A new trial is appropriate in instances where the "jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Venson v. Altamirano,* 749 F.3d 641, 656 (7th Cir. 2014). In deciding whether to grant a new trial, the district court must make its own assessment of the evidence presented, and may, in order "to get a general sense of the weight of the evidence," assess both "the credibility of the witnesses and the comparative strength of the facts." *Abellan v. Lavelo Prop. Mgmt., LLC*, 948 F.3d 820, 831 (7th Cir. 2020).

The verdict in this case was not against the manifest weight of the evidence. Having weighed the credibility of the witnesses and the comparative strength of the facts, my assessment is that a verdict in Dart's favor was not unjust. Doctors testified that they could not find a neurological explanation for Bowers's inability to walk, and the injury Bowers sustained was not of the type that normally causes an inability to walk. His stubborn refusal to be tested is suspicious. Although the question of disability is not supposed to be a difficult one, and the ADA is intended to have broad coverage, this was an unusual case. There was a genuine factual dispute over Bowers's claim of impairment, and one that a jury was well situated to resolve. The jury decided against Bowers. It was not against the manifest weight of the evidence for it to do so.

A highly charitable reading of the evidence supports the jury's verdict in favor of Sheriff Dart, and such a verdict was not manifestly unjust. That is not to say that the Sheriff's office's approach to Bowers's cell assignments was appropriate. A different jury could have reached a verdict in Bowers's favor, but it was a jury's decision to make. Bowers's motions are denied.

ENTER:

Date:   March 30, 2020

Manish S. Shah
U.S. District Judge

8