

CERTIFIED COPY
A True Copy
Teste:
_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-1516

MARQUE BOWERS,

                  *Plaintiff-Appellant*,

v.

THOMAS J. DART, *et al.*,

                  *Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-2483 — **Manish S. Shah**, *Judge*.

ARGUED JANUARY 22, 2021 — DECIDED JUNE 16, 2021

Before RIPPLE, KANNE, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Cook County inmate Marque Bowers filed this federal civil rights lawsuit after other inmates attacked him in 2012. Bowers alleged that Cook County, the Cook County Sheriff, and other Cook County Jail employees failed to protect him, instituted an observation policy that caused the attack, and later discriminated against him because of a resulting disability. The district court dismissed most of Bowers's claims before trial and, after a jury returned

a verdict in the Sheriff's favor on the remaining claims, denied Bowers's post-trial motions. Bowers now appeals from each of the district court's determinations. We affirm.

# I

On December 31, 2012, a group of inmates at the Cook County Jail attacked Marque Bowers in the housing block hallway. The assault left Bowers in the jail infirmary with serious injuries, and the record shows that he uses a jail-provided wheelchair to this day. The jail is short on ADA-compliant cells, however, and, save for one month, Bowers has lived in cells without accessible showers or toilets.

A few days after the attack, on January 3, 2013, Bowers submitted a grievance complaining that his "repeated cries for help [went] unresponded to by the [correctional officer] on duty" and urging the jail to "press charges on all of the people who were identified for assaulting" him on New Year's Eve. The jail responded that it would contact Bowers to press charges against the inmates he identified as attackers. Not satisfied by this response, Bowers appealed to the Director of Program Services, but the Director denied the administrative appeal. Bowers learned of the denial on February 26, 2013.

So Bowers tried again. That same day, he filed a second grievance. The jail requires that inmates file any grievance within 15 days of the triggering event, however, so it processed Bowers's February 26 submission as a "non-grievance." The jail nonetheless reassured Bowers that the Office of Professional Review remained in the process of investigating his allegation that the officer on duty at the time of the

Case: 1:16-cv-02483 Document #: 239 Filed: 07/08/21 Page 3 of 12 PageID #:3641
Case: 20-1516     Document: 00713841858     Filed: 07/08/2021     Pages: 12

No. 20-1516 3

December 31 attack ignored him. That Office later cleared the correctional officer of any misconduct related to the attack.

Fast forward to February 22, 2016, the day Bowers filed his complaint in federal court. In his complaint, Bowers raised claims under 42 U.S.C. § 1983 alleging that three jail employees—Officer Rottar, Social Worker Puckett, and Lieutenant Tucker—had advance notice of the risk that he would be attacked yet failed to protect him from harm.

Bowers also raised a municipal liability claim under *Monell v. Department of Social Services of New York*. See 436 U.S. 658 (1978) (permitting § 1983 actions against bodies of local government if a constitutional injury is caused by an official policy, a widespread and well-settled practice or custom, or an official with final policy-making authority). He alleged that the Cook County Sheriff's Department's observation policy—known as "vertical cross-watching"—enabled the attack. Under that policy, officers assigned to one floor of the housing block cover other floors while the officers assigned to those floors are on break. To Bowers's mind, this policy left him vulnerable and delayed the officer's response.

Finally, Bowers alleged that the Sheriff's failure to provide ADA-compliant facilities after the attack constituted disability discrimination in violation of the Americans with Disabilities Act and the Rehabilitation Act.

The litigation did not go well for Bowers. The district court dismissed his failure-to-protect claims as unexhausted and his *Monell* claim as untimely. And although Bowers's ADA and Rehabilitation Act claims proceeded to trial, the jury returned a verdict in favor of the Sheriff, and the district court

Case: 1:16-cv-02483 Document #: 239 Filed: 07/08/21 Page 4 of 12 PageID #:3642
Case: 20-1516    Document: 00713841858    Filed: 07/08/2021    Pages: 12

4    No. 20-1516

denied Bowers's post-trial motions. Bowers now appeals each of the district court's three adverse rulings.

## II

We begin with the district court's conclusion that Bowers, before filing suit in federal court, did not exhaust his failure-to-protect claims as required by the Prison Litigation Reform Act of 1995. See 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Block*, 549 U.S. 199, 211 (2007).

The Cook County Department of Corrections has established a procedure directing any aggrieved inmate to file an internal grievance within 15 days of the triggering event. Bowers followed that procedure here. He filed a grievance just a few days after the attack, complaining that the officer on duty did not respond to his pleas for help. But the district court identified a problem for Bowers: the allegation in his grievance—that the correctional officer ignored him *during* the attack—is substantively distinct from the allegation in his federal complaint—that numerous prison employees knew of the risk and did nothing to protect Bowers from the impending harm *before* it occurred. This disconnect between the grievance and complaint, the district court determined, meant that Bowers had failed to exhaust his administrative remedies.

The district court got this right. Bowers alleged in his complaint that he "made repeated complaints to defendants Rottar, Puckett, and Tucker that he had received threats of physical violence from other detainees and requested to be moved to a different housing unit," and that they "had the power to transfer, or to request a transfer, or move plaintiff to

No. 20-1516 5

a more secure environment and thereby protect plaintiff from an unnecessary risk of physical harm." But Bowers presented none of these allegations to the jail through the grievance process, and federal courts lack discretion to consider a claim that has not traveled the required administrative path. See *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."). Contending that Officer Rottar failed to come to his aid during the attack is not the same as alleging that the jail employees predicted but ignored the risk.

Although the district court determined that Bowers did not exhaust his failure-to-protect claim, it concluded that Bowers had exhausted his *Monell* claim. As the court recognized, Bowers complained in his grievance that the correctional officer did not respond in the heat of the attack, and his theory is that the Department's vertical cross-watching policy prevented a timely response in that moment. So, although Bowers's failure-to-protect claim could not withstand the PLRA exhaustion requirement, his *Monell* claim survived dismissal and proceeded to discovery and ultimately summary judgment.

### III

That brings us to the district court's conclusion at summary judgment that Bowers filed his *Monell* claim after the statute of limitations had expired. Because § 1983 does not contain an express limitations period, federal courts adopt the law of the forum state. See *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001). Bowers's *Monell* claim is thus subject to Illinois's two-year limitations period. See *id.* Illinois law also provides that the limitations period tolls while an inmate

exhausts administrative remedies pursuant to the PLRA. See *id.* at 522.

We see the timeline just as the district court did. The alleged attack occurred on December 31, 2012. Bowers had 15 days to file any grievance related to the attack, and, after he received a response, 14 days to file an administrative appeal. He proceeded through that process and learned that the jail denied his appeal on February 26, 2013. At that point, no remedies remained for Bowers to exhaust: he could not file a new grievance because more than 15 days passed since the attack, and there is no procedural step beyond denial of an appeal. So the two-year clock began ticking, giving Bowers until February 26, 2015 to file his federal complaint. Because he did not do so until nearly one year later, on February 22, 2016, we agree that Bowers's § 1983 claim is untimely.

Bowers presses a different view. The statute of limitations, he contends, should have been tolled while the Cook County Office of Professional Review investigated the correctional officer's conduct related to the attack. That investigation did not conclude until June 2015, giving Bowers, as he sees the timeline, until June 2017 to file his complaint.

Here too Bowers falls short. The presence of an internal-affairs investigation does not lead to any remedies for the prisoner. As we explained in *Pavey v. Conley*, the PLRA "is concerned with the 'remedies' that have been made available to prisoners. An internal-affairs investigation may lead to disciplinary proceedings targeting the wayward employee but ordinarily does not offer a remedy to the prisoner who was on the receiving end of the employee's malfeasance." 663 F.3d 899, 905 (7th Cir. 2011). Where a process does not lead to a remedy for the prisoner under the PLRA, there is nothing for

No. 20-1516 7

the inmate to exhaust and the statute of limitations does not toll. We see no error in the district court's dismissal of Bowers's *Monell* claim as untimely.

## IV

We arrive at the district court's determinations following Bowers's trial on his ADA and Rehabilitation Act discrimination claims against the Cook County Sheriff. Recall the relevant allegations: Bowers maintains that he is paralyzed and confined to a wheelchair, and that the jail intentionally discriminated against him because of his disability when it failed to house him in an ADA-compliant cell following the December 31, 2012 attack.

At trial, Bowers filed a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). The district court denied that motion, however, and the jury returned a verdict in favor of the Sheriff on both claims. Bowers then renewed his Rule 50 motion and accompanied it with a separate request for a new trial under Rule 59. The district court again denied both motions. Bowers asks us to reverse each ruling.

### A

We review the district court's decision to deny Bowers's Rule 50 motions for judgment as a matter of law *de novo*. See *Martin v. Milwaukee County*, 904 F.3d 544, 550 (7th Cir. 2018). Rule 50 states that before the case is submitted to the jury (Rule 50(a)) or after a jury verdict (Rule 50(b)), a district court may direct the entry of "judgment as a matter of law" if "a reasonable jury would not have a legally sufficient evidentiary basis to find" in the nonmovant's favor. FED. R. CIV. P. 50(a), (b). We have emphasized that Rule 50 imposes "a high bar." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 601 (7th Cir.

2019). The challenge for Bowers is that "we give the nonmovant 'the benefit of every inference' while refraining from weighing for ourselves the credibility of evidence and testimony." *Id.* (quoting *EEOC v. Costco Wholesale Corp.*, 903 F.3d 618, 621 (7th Cir. 2018)). Although we review the entire trial record, we must "disregard all evidence favorable" to Bowers that "the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). "Only if no rational jury could have found for the nonmovant may we disturb the jury's verdict." *Ruiz-Cortez*, 931 F.3d at 601.

As for the merits, discrimination claims under the ADA and the Rehabilitation Act are governed by the same standards, with one exception related to causation that is not relevant here. See *Conners v. Wilkie*, 984 F.3d 1255, 1260 (7th Cir. 2021). Under both statutes, Bowers had to prove that he is a qualified individual with a disability, and that he was denied access to a service, program or activity because of his disability. See *Shuhaiber v. Ill. Dep't of Corr.*, 980 F.3d 1167, 1170 (7th Cir. 2020).

The district court concluded that a reasonable jury could find that Bowers is not a qualified individual with a disability. We agree. A qualified individual with a disability is someone who has "a physical or mental impairment that substantially limits one or more of his major life activities," has "a record of such an impairment," or is "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Bowers contends that because he is wheelchair-bound, he is impaired, or that, at the very least, the jail regarded him as being impaired by providing him a wheelchair.

The oddity in this case is not the impairment itself. We do not doubt that a physical condition resulting in wheelchair

use will generally be one that reflects a substantial limitation. Here, however, the district court concluded that the jury had sufficient evidence to find that Bowers lied about needing a wheelchair.

Having taken our own close look at the trial record, we see the evidence the same way. Bowers was the victim of a beating that left him with serious back injuries. But there is no objective evidence in the record showing that Bowers is *actually* unable to walk as a result. One physician, Dr. Andrew DeFuniak, testified that the trauma team's imaging work did not reveal any neurological injury. Never before, Dr. DeFuniak explained, had he seen a patient with Bowers's injury lose the ability to walk as a result of that injury. A second physician, Dr. Patricia Raksin, went as far as to say that Bowers's injury itself cannot cause paralysis, adding that she would not have anticipated that Bowers's injury would result in any neurological deficit. The district court committed no error in concluding that a reasonable jury could have credited this evidence.

Even without this extensive medical testimony, the jury heard other evidence calling into question the veracity of Bowers's claimed injury. For one thing, Bowers admitted to moving his leg in a video taken immediately after the attack. Furthermore, with knowledge of this pending litigation, Bowers refused to submit to MRI and EMG testing. Those test results may have allowed a conclusive determination of Bowers's ability to walk. His refusal to undergo the tests may have raised suspicion with at least some members of the jury. With all of this evidence in mind, we share the district court's conclusion that a rational juror could doubt that Bowers was telling the truth by insisting he could not walk.

So too could a reasonable juror conclude that the jail did not regard Bowers as disabled. An individual is "regarded as" having a qualifying impairment if subjected to a prohibited action "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(1)(C), (3)(A). "To meet the 'regarded as' prong, the [defendant] must believe, correctly or not, that the [plaintiff] has an impairment that substantially limits one or more of the major life activities." *Povey v. City of Jeffersonville*, 697 F.3d 619, 622 (7th Cir. 2012).

Bowers correctly highlights that some evidence at trial supported his position. When asked whether he considered Bowers "disabled," Dr. DeFuniak responded, "I considered him to have, you know, some condition that, you know, required a wheelchair, yes. That's what he told me, yes." Bowers also emphasized the fact that the jail allowed him to use the wheelchair—a decision suggesting (as Bowers sees the evidence) that the Sheriff understood him to need it.

But the Sheriff poked holes in this evidence during trial. Dr. DeFuniak clarified on cross-examination that his response to the question whether Bowers is disabled was not reflective of a clinical assessment or legal determination. Rather, Dr. DeFuniak uses the term "disabled" in a looser and broader medical sense, capturing "[a]nyone that's endorsing to me that they, you know, aren't functioning a hundred percent." Put differently, it is Dr. DeFuniak's practice to take patients who complain of disabilities at their word—including Bowers. As for the fact that the jail allowed Bowers to use a wheelchair, one Sheriff's Office employee testified that the office defers automatically to the medical staff's wheelchair

No. 20-1516 11

recommendation without reaching any independent conclusions. Given the frequent challenges that come up in day-to-day prison administration, it is not difficult to imagine that the most expedient option for all was to acquiesce to Bowers's wheelchair request. All of this evidence could have weakened Bowers's case in the eyes of a reasonable jury.

We pause for one additional observation. Bowers asserts that because a different district court—in a different case at a different procedural posture—made a disability determination in his favor, that finding should have prevented the district court here from allowing the jury to consider that same question. Not so. The district court that made the earlier factual finding did so on behalf of an entire class of 60 plaintiffs, as part of determining whether the plaintiff class was ascertainable for purposes of class certification. See *Lacy v. Dart*, No. 14 C 6259, 2015 WL 7351752, at *3 n.6 (N.D. Ill. Nov. 19, 2015). *Lacy* did not entail an individualized assessment of Bowers's disability. And, later in the *Lacy* case, when the district court relied on its own earlier factual finding regarding classwide disability to grant partial summary judgment in favor of the plaintiff class, our court vacated and reversed. We reasoned that the district court's decision to afford preclusive effect to its own findings of fact on such a central, disputed question "deprived the defendants of their right to a jury trial on ADA liability." *Lacy v. Cook County*, 897 F.3d 847, 860–61 (7th Cir. 2018).

Here, as in *Lacy*, the question whether Bowers is a qualified individual with a disability was one for the jury. Together, Bowers and the Sheriff presented sufficient evidence from which the jury could make an informed determination on this disputed question. Our role is "to decide whether a

highly charitable assessment of the evidence supports the jury's verdict or if, instead, the jury was irrational to reach its conclusion." *May v. Chrysler Grp., LLC*, 716 F.3d 963, 971 (7th Cir. 2013). We cannot say the jury acted irrationally in concluding that Bowers is not disabled and the Sheriff did not regard him as such.

B

We end by considering the district court's denial of Bowers's Rule 59 motion for a new trial. "A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014). In contrast to our review of a ruling on a Rule 50 motion, we review the district court's denial of a Rule 59 motion for an abuse of discretion. See *Ruiz-Cortez*, 931 F.3d at 602.

We see no abuse of discretion in the district court's ruling. A verdict will be set aside on that ground "only if 'no rational jury' could have rendered the verdict," *Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012), and we have already concluded that a reasonable juror could find that Bowers is not a qualified individual with a disability. The jury was well situated to answer that factual question, and we will not disrupt its conclusion.

For these reasons, we AFFIRM.